```
                  IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF NEW JERSEY


 ─────────────────────────────────────
                                      :
 EUSA-ALLIED ACQUISITION CORP.,       :
                                      :
               Plaintiff,             :   Civil Action
                                      :   No. 11-3181 (JBS-AMD)
       v.                             :
                                      :
 TEAMSTERS PENSION TRUST FUND         :   OPINION
 OF PHILADELPHIA & VICINITY,          :
 and LOCAL UNION 312                  :
 INTERNATIONAL BROTHERHOOD OF         :
 TEAMSTERS,                           :
                                      :
               Defendants.            :
                                      :
 ─────────────────────────────────────
```

APPEARANCES:

James P. Anelli, Esq.
Joseph P. Paranac, Esq.
Robert M. Pettigrew, Esq.
LECLAIRRYAN
One Riverfront Boulevard
16th Floor
Newark, NJ 07102
    Counsel for Plaintiff

Jo Bennett, Esq.
Frank C. Sabatino, Esq.
STEPHENS & LEE
1818 Market Street
29th Floor
Philadelphia, PA 19103
    Counsel for Defendant Teamsters Pension Trust Fund of
    Philadelphia & Vicinity

Susan A. Murray, Esq.
FREEDMAN & LORRY, PC
1601 Market Street
2nd Floor
Philadelphia, PA 19103
    Counsel for Defendant Local Union 312, International
    Brotherhood of Teamsters

**SIMANDLE,** District Judge:

## I. INTRODUCTION

This matter comes before the Court on the motion of Plaintiff EUSA-Allied Acquisition Corp. for a temporary restraining order entering a stay of any interim payments or penalties being sought by Defendant Teamsters Pension Trust Fund of Philadelphia and Vicinity under the Multi-employer Pension Plan Amendments Act (MPPAA) of 29 U.S.C. §§ 1381-1453. The Court received briefing in support of the motion from Plaintiff EUSA-Allied [Docket Item 1], and in opposition to the motion from Defendant Teamsters Pension Trust Fund [Docket Item 8] as well as from Defendant Local Union 312, International Brotherhood of Teamsters [Docket Item 13]. In addition, Plaintiff submitted the Declaration of Edward Burke, the Chief Financial Officer of EUSA-Allied's parent company, North American Propane, Inc., in support of Plaintiff's contention of irreparable injury. [Docket Item 9.] The Court held a hearing on the motion on Tuesday, June 7, 2011, at which all parties appeared through counsel. The Court reserved decision on the motion at that time. On June 15, 2011, the Court convened a telephone conference and announced its decision to deny the motion on the record, with all parties in attendance. This Opinion sets out the reasoning of that decision.

**II.  FACTUAL BACKGROUND**[1]

Plaintiff is a subsidiary corporation of North American Propane ("NAP").  In February of 2006, Plaintiff negotiated an acquisition of Allied Propane.  As part of its acquisition of Allied Propane, EUSA-Allied agreed to assume Allied's obligations under its collective bargaining agreement (CBA) with Defendant Local Union 312.  One of those obligations was to contribute to Defendant Teamsters Pension Trust Fund.  Plaintiff alleges that one of the key components of this negotiation was the duration that Plaintiff would be obligated to participate in the Plan and at what point it would face withdrawal liability under the MPPAA.  Consequently, as part of the ultimate acquisition, the parties (EUSA-Allied, Allied Propane, Teamsters Pension Trust Fund, and the Local Union 312) drew up an agreement that stated that, pursuant to Article IX, Section G of the Pension Plan, EUSA-Allied would have a "free look" period under the Plan.  Specifically, EUSA-Allied would face no withdrawal liability to the Fund under the MPPAA so long as it contributed to the Fund "for no more than five consecutive plan years."

The referenced section of the Plan, Article IX, Section G, governs the "free look" period for all employer contributors.  It states that "Pursuant to ERISA Section 4210, 29 U.S.C. Section 1390, an employer who withdraws from the Plan in a complete or

---

[1] All facts, unless stated otherwise, are taken from the Plaintiff's Verified Complaint.

partial withdrawal is not liable to the Plan if the employer . . . had an obligation to contribute to the Plan for no more than five consecutive plan years preceding the date on which the employer withdraws."  In the Definitions section of the Plan, it states that "[t]he Plan Year shall be the calendar year."  (Plan, Art. I, Sec. A.)

The referenced section of the statute, 29 U.S.C. § 1390, is a provision of the MPPAA, which governs permissible "free look" periods under applicable plans (such as Defendant).  That section states that "An employer who withdraws from a plan in complete or partial withdrawal is not liable to the plan if the employer . . . (2) had an obligation to contribute to the plan for no more than the lesser of (A) 6 consecutive plan years preceding the date on which the employer withdraws, or; (B) the number of years required for vesting under the plan."

In November of 2010, Plaintiff notified Defendants of their intention to withdraw from the plan on December 31, 2010, and referenced the "free look" agreement as a basis for their claim that the withdrawal should be without liability to the plan. (Cleves Decl. Ex. D.)  On December 20, 2010, Defendant Trust Fund replied to Plaintiff's stated intention to withdraw that its interpretation of the "Free Look Agreement," read in conjunction with Article IX Section G of the Plan and the relevant section of the MPPAA, established that the free look period had expired earlier in 2010 because at least one of the Plaintiff's

4

participating employees had fully vested in the plan already and that, therefore, under § 1390(a)(2)(B), the free look period had expired.  (Cleves Decl. Ex. E.)  Therefore, Defendant explained that if Plaintiff withdrew as announced, it may face withdrawal liability under the MPPAA.  On December 31, Plaintiff withdrew from the Plan as announced.

On April 19, 2011, Defendant sent Plaintiff a withdrawal liability letter, stating that it had determined that the Plaintiff had withdrawn from the plan after the expiration of the free look period, and that it therefore had incurred withdrawal liability under the MPPAA. It calculated a full withdrawal liability under the MPPAA at approximately $680,000, and established a quarterly interim payment structure, to begin with a payment of $109,000 on June 18, 2011.  (Cleves Decl. Ex. B.)

On June 2, 2011, Plaintiff filed this action with its motion for temporary relief from this repayment schedule.  The Complaint, among other relief, seeks (1) a declaratory judgment that, under the "Free Look" agreement, the Plaintiff had no withdrawal liability; and (2) relief from MPPAA withdrawal liability on the grounds that Defendants fraudulently induced Plaintiff into acquiring Allied Propane in February of 2006 with the promise that no withdrawal liability would accrue until after the expiration of the fifth plan year, but that Defendants "had no intention of honoring their express representations of fact"

5

on this point.  Plaintiff also seeks contract and other state-law damages.

### III.  DISCUSSION

#### A.  Standard

When evaluating a motion for a temporary restraining order, the Court must consider four factors: "(1) the likelihood of success on the merits after a full hearing; (2) whether the movant will be irreparably injured without the restraint; (3) whether the party to be enjoined will be irreparably injured if the preliminary relief is granted; and (4) whether the public interest will be served by the preliminary relief."  Value Group, Inc. v. Mendham Lake Estates, L.P., 800 F. Supp. 1228, 1231 (D.N.J. 1992) (citing Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187, 191-92 (3d Cir.1990)).  On the second prong, to warrant granting a TRO, irreparable harm alone is not enough.  A plaintiff has the burden of proving a "clear showing of immediate irreparable injury." Continental Group, Inc. v. Amoco Chemicals Corp., 614 F.2d 351, 359 (3d Cir. 1980).  The "requisite feared injury or harm must be irreparable--not merely serious or substantial," and it "must be of a peculiar nature, so that compensation in money cannot atone for it."  Glasco v. Hills, 558 F.2d 179, 181 (3d Cir. 1977).  A plaintiff must establish that all four factors favor preliminary relief.  Opticians Ass'n of America, 920 F.2d at 192.

6

**B. Likelihood of Success on the Merits**

1. <u>Plaintiff's Fraudulent Inducement Claim</u>

Plaintiff seeks to avoid its alleged withdrawal liability and set aside the arbitration requirements of the Plan and MPPAA under a theory of fraudulent inducement, claiming that it only agreed to enter into the free look agreement and assume Allied's obligations under the CBA in reliance on Defendants' representations that it would be permitted to withdraw from the Plan within five calendar years from the date it acquired Allied Propane in February of 2006.

The Third Circuit has recognized the existence of a defense to liability under the MPPAA by a plaintiff/employer that it was fraudulently induced into contributing to a multi-employer pension plan, <u>Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters & Employers Pension Fund</u>, 847 F.2d 113, 115 (3d Cir. 1988).

> Assuming the truth of Colteryahn's allegations, the substantial withdrawal liability assessed upon Colteryahn in this case stemmed in large part (if not entirely) from fraudulent misrepresentations by the Fund, for which the federal common law of pension plans would provide a remedy. Indeed, we would find it quite curious if Congress had given multi-employer plans the immense power that the Fund has exercised in this case--viz., the power to assess upon a withdrawing employer a substantial penalty while providing the employer with few defenses--yet did not intend to place some check on the conduct and practices of such plans. Moreover, we doubt that Congress intended that innocent employers, penalized by the fraudulent exercise of such powers, would be without remedy. Finally, given the predominant federal interest in the

7

> conduct of pension plans' affairs, any check on such power must be available in federal court.

Id. at 121-22.

Thus, were Plaintiff to prevail on its fraudulent inducement claim, it would be entitled to relief from withdrawal liability. However, the Court concludes that Plaintiff has not demonstrated a probability of success on the merits of this claim.

To prevail on its claim of fraudulent inducement under the "federal common law of pension plans", EUSA-Allied must prove

> (1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as the proximate result.

Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters and Employers Pension Fund, 1993 WL 120457 at * 2 (W.D. Pa. Feb. 9, 1993) (considering merits of plaintiff's fraudulent inducement claim after remand from Third Circuit) (quoting Scaife Co. v. Rockwell-Standard Corp., 446 Pa. 280, 284 (1971)).

The Court finds that Plaintiff has not shown a likelihood that it will be able to prove many of these elements.  Plaintiff alleges that it interpreted the "free look" agreement, and the language of the Plan itself in Art. IX, Section G, to state unambiguously that Plaintiff was free to withdraw from the Fund without liability up to five calendar years after EUSA-Allied acquired Allied Propane and assumed its obligations under the CBA.  Defendant Fund contends that the Plan and "free look"

8

agreement never state that free look period extends to five "full" plan years, and that, read in conjunction with the referenced statute, § 1390(a)(2)(B) limits the free look period in the agreement and Plan to "the number of years required for vesting under the plan." Thus, because a participating employee of Plaintiff could have vested in the plan after four full plan years and 750 hours of service in the fifth year, the free look period under the Plan expired after four plan years and 750 hours of covered work.

Plaintiff alleges that it justifiably interpreted the language of the "free look" agreement to mean that it would not be assessed withdrawal liability if it withdrew from the Plan on December 31, 2010. It further asserts that Defendants fraudulently intended Plaintiff to so interpret the agreement and to rely on that fact. Plaintiff also alleges that, had it known that the free look period extended only to four full plan years plus 750 hours in the fifth year, it would not have acquired Allied Propane and assumed its obligations under the CBA.

However, the Court notes that, based upon the representations of counsel for both Defendants in this case, Plaintiff itself drafted the language of the free look agreement. Additionally, the free look agreement explicitly references the Plan, which explicitly states that it is to be interpreted "pursuant to" the statute. "When a contract expressly incorporates a statutory enactment by reference, that enactment

9

becomes part of a contract for the indicated purposes just as though the words of that enactment were set out in full in the contract." Williston on Contracts (4th ed.) § 30:19, citing <u>United States v. Insurance Co. of North America</u>, 131 F.3d 1037 (D.C. Cir. 1997). <u>See also</u>, <u>Williams v. Stone</u>, 109 F.3d 890, 896 (3d Cir. 1997) (holding statutory provision referenced in contract to be "implicitly incorporated" into the contract). Therefore, Plaintiff was on constructive, if not actual, notice that the statutory limitation on free look periods might apply and could influence the interpretation of the "free look" agreement.

The Court finds that Plaintiff is not likely to be able to prove that the language of the free look agreement was a misrepresentation, that Defendants were the "makers" of that misrepresentation, that Defendants intended to induce Plaintiff to act by such a "misrepresentation", or that any reliance on such a "misrepresentation" would have been justified. Further, the Court finds no evidence to support the unlikely proposition that, had Plaintiff known in February of 2006 that its free look period to withdraw from the Plan extended to only four years plus 750 hours rather than five full calendar years, it would have chosen to forgo the acquisition Allied. Consequently, Plaintiff has not demonstrated a probability of success on its fraudulent inducement claim. At this point, it does not appear likely that

Plaintiff can set aside the Plan, with its mandatory arbitration provision, on grounds of fraudulent inducement.

### 2. Statutory Limitation on Staying Relief

Another bar to Plaintiff's relief on the merits is the MPPAA's "pay first dispute later" provisions. Defendants argue that the Court is without authority to enter any injunction staying interim payments in this matter because such payments are mandatory under MPPAA, citing to the statute's requirement that interim withdrawal liability payments be made during the pendency of any challenge to the assessment of liability. Section 1399(c)(2) states that "withdrawal liability <u>shall</u> be payable in accordance with the schedule set forth by the plan sponsor . . . notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule." (emphasis added.) Similarly, § 1401(d) states that interim payments must be made during the employer's challenge, if any, in arbitration, and, should the employer's challenge to the liability be vindicated by the employer, the employer will be reimbursed for any overpayment.

The Court agrees with Defendants. The Court finds that the statutory language of MPPAA and controlling precedent in the Third Circuit is very clear that an employer such as Plaintiff <u>must</u> comply with the interim withdrawal liability payments during the pendency of a challenge to the assessment of withdrawal liability, regardless of equitable considerations. The Third

11

Circuit has held, unambiguously, that a fund that has assessed withdrawal liability "is entitled to collect interim payments even when an employer launches a facial constitutional challenge to the statute. Additionally, payments must be made whether the underlying dispute is resolved through arbitration or by a federal court." Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc. v. Centra, 983 F.2d 495, 507 (3d Cir. 1992).

The Third Circuit recognizes no equitable exceptions to this mandatory rule. In its most recent decision considering equitable exceptions to the "pay now dispute later" structure of the MPPAA, the court noted that "we have never held that there are any equitable exceptions to the statutory provisions on interim payments, and we decline to do so now." Galgay v. Beaverbrook Coal Company, 105 F.3d 137, 140 (3d Cir. 1997) (citing Centra, 983 F.2d at 507-08).

Plaintiff urges the Court to apply a narrow equitable exception recognized in the Fifth and Seventh Circuits that a district court can grant a stay of interim payments to an employer upon the combined showing of both irreparable injury and that the Fund's claim is not colorable or is frivolous. See Trustees of the Plumbers and Pipefitters National Pension Fund v. Mar-Len, Inc., 30 F.3d 621 (5th Cir. 1994), Robbins v. McNicolas Transp. Co., 819 F.2d 682 (7th Cir. 1987). Plaintiff argues that the reasoning of the Third Circuit's opinion in Galgay v.

12

Beaverbrook was compatible with such an exception.  The Court concludes that, while such an exception is not explicitly prohibited by Beaverbrook, it is certainly not approved either.  The Court expressed limited agreement with the Fifth and Seventh Circuit courts on the issue that irreparable harm alone is "insufficient to warrant equitable relief from interim payment liability."  Id. at 141.  However, the Beaverbrook majority opinion concluded that, because the employer had not raised the argument that the fund's claim was frivolous, it would not consider the issue.  Thus, the Circuit is silent on whether this Court could apply an equitable exception in a case of irreparable injury and frivolous liability, and the Court finds no district court opinion in this circuit following the direction of the Fifth and Seventh circuits on this issue.  The Court also notes that at least one other circuit, the First Circuit, has erected even more stringent requirements around staying interim withdrawal liability payments.  See Giroux Bros. Transp., Inc. v. New England Teamsters & Trucking Indus. Pension Fund, 73 F.3d 1, 5 (1st Cir. 1996) (requiring employer show threat of imminent liquidation, rather than lower standard of "irreparable injury" from Seventh and Fifth Circuits).

    Secondly, the Court additionally finds that, even under the Fifth and Seventh Circuit doctrines, the Court would be compelled to deny Plaintiff's motion.  Under this line of cases, the courts have permitted a district court to stay interim withdrawal

13

liability payments on the showing of <u>both</u> irreparable injury to the employer and that the fund's underlying withdrawal liability claim is frivolous.  See <u>Robbins v. McNicolas Transp. Co.</u>, 819 F.2d 682 (7th Cir. 1987).  However, even in the Fifth and Seventh Circuits, this exception has been applied rarely and with caution.  The Seventh Circuit has clarified that this exception "is at most a recognition that if the fund's claim is frivolous – if the arbitrator is almost certain to rule for the employer – then the plan is engaged in a ploy that a court may defeat. . . . Having assured itself that the plan's claim is legitimate, however, the court should order the making of interim payments and leave the rest to the arbitrator."  <u>Trustees of the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Central Transport, Inc.</u>, 935 F.2d 114, 119 (7th Cir. 1991).

Plaintiff's attempt to fit within this exception is clarified by noting that, even in the Fifth and Seventh Circuits, the courts are skeptical of employers' claims that the fund's argument is frivolous.  In the Fifth Circuit case of <u>Mar-Len</u>, <u>supra</u>, the court determined that the fund's assessment of withdrawal liability was not sufficiently frivolous to qualify for the exception.  30 F.3d at 626.  The same result obtained in the Seventh Circuit case of <u>Trustees of the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Rentar Industries, Inc.</u>, 951 F.2d 152, 155 (7th

Cir. 1991). The only examples of sufficiently "frivolous" claims under these circuits found by the Court are cases where the fund seeks to extract withdrawal liability in explicit conflict with the provisions of MPPAA itself. See Robbins v. McNicolas Transp. Co., 819 F.2d 682 (7th Cir. 1987) (finding fund's assessment of withdrawal liability against employer that ceased making contributions during labor dispute, despite explicit "labor dispute" exception to liability under MPPAA, 29 U.S.C. § 1398(2)).

In the instant case, Plaintiff argues that Defendant Teamsters Pension Trust Fund's claim for withdrawal liability is not colorable or is frivolous. As explained above in the fraudulent inducement section, the Court is not convinced that the Fund's claim for withdrawal liability, premised as it is on the statutory language, is frivolous.

To determine whether withdrawal liability was properly assessed in this case requires an inquiry into the extent to which the terms of the free look provisions of the statute control the interpretation of the Plan and the parties' "free look agreement." The Court recognizes that this determination is a difficult question, but, for that very reason, denies that the claim for withdrawal liability is "frivolous" as required to enter a stay of interim withdrawal payments. It is not frivolous to argue that when a contractual provision incorporates the restrictions of a statute by reference, the terms of that statute

15

would limit the protections of the contract, even if it is later determined that, in this case, EUSA's interpretation of the agreement and statute are ultimately vindicated. See Williams v. Stone, 109 F.3d 890, 896 (3d Cir. 1997). It is certainly not frivolous to the degree found in McNicolas, where assessment of withdrawal liability plainly conflicted with an exception to liability in the MPPAA statute.

Consequently, the Court concludes that, even if it were to apply the Fifth and Seventh Circuits' exception to the general "pay now dispute later" rule under the MPPAA, the exception would not be justified in this case.

### C. Immediate and Irreparable Injury

Alternatively, the Court also concludes that Plaintiff is not entitled to the TRO that it seeks at this time because, while the Court assumes without deciding that a finding of irreparable injury is satisfied by the financial data attached to the Declaration of Edward Burke, Plaintiff has not demonstrated that this injury is immediate as required. Upon review of the facts of the case and the MPPAA repayment schedule, the Court finds that the threat of injury is not sufficiently immediate to warrant the emergency injunctive relief being sought.

Plaintiff alleges that the injury is immediate because the first interim withdrawal liability payment is due on June 18, 2011, according to Defendant Teamsters Pension Trust Fund's April 19, 2011 demand letter, attached as Exhibit B to Plaintiff's

verified Complaint. Plaintiff alleges that if the first interim payment is not made by June 18, 2011, the entire calculated withdrawal liability of $679,325.13 will become due immediately.

However, as counsel for Defendant Trust Fund indicated in the hearing on this matter, the default provisions of MPPAA actually provide for a longer period. Under 29 U.S.C. § 1399(c)(5)(A), Plaintiff's initial payment, if not made on the demanded date of June 18, 2011, will only enter default 60 days after Plaintiff receives written notification from Defendant Trust Fund of Plaintiff's failure to make payment on June 18, 2011. Thus, under this schedule, even if no payment is made on June 18, Plaintiff will not be in default under MPPAA until, at the earliest, August 17, 2011. Meanwhile, the preliminary injunction hearing will be convened before August 17 when the question of immediacy can be revisited.[2]

The Court finds this timeline does not meet the exacting demands of "immediate" harm to warrant the temporary restraints being sought pending a preliminary injunction hearing, as required under Fed. R. Civ. P. 65. Consequently, the Court will also deny Plaintiff's TRO on this alternative basis.

---

[2] By separate Order filed June 16, 2011, the Court, after discussion with all counsel, has provided for expedited discovery, a supplemental briefing schedule, and a hearing date of August 3, 2011 upon the motion for preliminary injunction.

**VI.   CONCLUSION**

Therefore, because the Court finds that Plaintiff has not demonstrated a probable success on the merits of its fraudulent inducement claim, has not demonstrated that the Court has the discretion to enter the equitable relief it seeks, and has not demonstrated that its potentially irreparable injury is sufficiently immediate, the Court will deny its motion for a temporary restraining order.  The accompanying Order shall be entered.

**June 16, 2011**                                    **s/ Jerome B. Simandle**
Date                                                 JEROME B. SIMANDLE
                                                     U.S. District Judge