IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EUSA-ALLIED ACQUISITION CORP., <br><br> Plaintiff, <br><br> v. <br><br> TEAMSTERS PENSION TRUST FUND OF PHILADELPHIA & VICINITY, and LOCAL UNION 312 INTERNATIONAL BROTHERHOOD OF TEAMSTERS, <br><br> Defendants. | Civil Action No. 11-3181 (JBS-AMD) <br><br> **OPINION** |

APPEARANCES:

James P. Anelli, Esq.
Joseph P. Paranac, Esq.
Robert M. Pettigrew, Esq.
LECLAIRRYAN
One Riverfront Boulevard
16th Floor
Newark, NJ 07102
        Counsel for Plaintiff

Susan A. Murray, Esq.
FREEDMAN & LORRY, PC
1601 Market Street
2nd Floor
Philadelphia, PA 19103
        Counsel for Defendant Local Union 312, International
        Brotherhood of Teamsters


**SIMANDLE**, Chief Judge:

I.   **INTRODUCTION**

        This case presents issues arising in a highly regulated area

of the law of multi-employer pensions when an employer seeks to

withdraw from the fund and the fund assesses a sum for withdrawal

liability to assure sufficient funding for any pensions that have

vested.  Such withdrawal liability is governed by the Multi-employer Pension Plan Amendments Act ("MPPAA") at 29 U.S.C. §§ 1381-1453.  Plaintiff EUSA-Allied Acquisition Corp. ("EUSA") sought to withdraw from the Defendant Teamsters Pension Trust Fund of Philadelphia and Vicinity ("Pension Fund") in late 2010, and the Pension Fund determined that the withdrawal occurred too late -- after expiration of a five-year "free look" period defined by the parties' agreement and the relevant Pension Plan -- and the Pension Fund assessed withdrawal liability of approximately $680,000 which Plaintiff contests.  Plaintiff has also named Defendant Local Union 312 International Brotherhood of Teamsters ("Local 312"), alleging essentially that Local 312 breached its contract with Plaintiff and mislead or fraudulently induced Plaintiff regarding the meaning of the five-year "free look" component of the Plan.  Local 312 is a separate entity from the Pension Fund, and only the Pension Fund asserts that EUSA must pay withdrawal liability.

This matter is currently before the Court on the motion for summary judgment of Defendant Local 312.  [Docket Item 47.] Defendant argues that it is entitled to judgment of dismissal as a matter of law because no dispute of fact exists in the record sufficient to establish liability on any of the asserted counts in the Complaint as to Defendant Local 312.  Plaintiff EUSA opposes the motion, arguing that disputes of fact exist that require the determination of a factfinder or, alternatively, that

Plaintiff should be permitted further discovery to pursue its claim of breach of contract.  For the reasons stated below, the Court will stay resolution of the contract dispute, grant Defendant's motion in part and deny it in part.

## II.  FACTS AND PROCEDURAL HISTORY

The following facts are taken from the parties' statements of undisputed material facts and are, unless otherwise noted, not materially disputed in the record.  The basic facts underlying the dispute at issue in this action have been recounted in the Court's two prior Opinions in this matter, first addressing Plaintiff's motion for a temporary restraining order on June 16, 2011 [Docket Item 22], and subsequently addressing Plaintiff's motion for a preliminary injunction on August 18, 2011 [Docket Item 18].

In late 2005, Plaintiff EUSA engaged in negotiations to acquire or purchase substantially all the assets of Allied Propane Company, Urie & Blanton Company ("Allied" or "Seller").  Def.'s Statement of Undisputed Facts ¶ 1.  One component of these negotiations was whether or not EUSA would assume the Seller's obligations under the Seller's existing collective bargaining agreement with Defendant Local 312, including the obligation to make employee contributions to the Defendant Teamsters Pension Trust Fund of Philadelphia and Vicinity (the "Pension Fund").  Id. ¶ 2.  One key detail in these negotiations was the issue of

3

whether EUSA would be subject to withdrawal liability under the Pension Plan or the collective bargaining agreement pursuant to the MPPAA. Id. ¶ 4. The Seller attempted to mollify Plaintiff's concern with incurring withdrawal liability by notifying Plaintiff that a "free look" provision of Defendants' Pension Plan existed. Id. ¶¶ 2-4.

In December of 2005, Tim Lehman and Ted Uniatowski, representatives of Defendant Local 312, met with officers of Plaintiff EUSA, including President of EUSA Mark Cleaves and Vice President of Operations Russell Lewis, as well as a representative of the Seller. Id. ¶ 5. No representative of Defendant Pension Fund was present. Id. At this meeting, the attendees discussed the Pension Plan's free look provision, and the participants agreed on an interpretation of the free look provision, whereby "the Company [EUSA], once the acquisition closed, would have five years of which they could participate in the Pension Fund and without incurring any withdrawal liability." Lewis Dep. 54:11-15. See also Uniatowski Dep. at 16:5-12 (stating that, while he does not recall the December 2005 meeting specifically, his understanding of the free look agreement and the free look provision of the Plan was that it provided companies with a five year "window where they could be in the pension plan . . . without assuming withdrawal liability.") EUSA President Cleaves recalled that

> somebody looked me in the eye at that meeting
> and said you have five years to participate in

4

> the plan, and if you get out within five
> years, that needed to coincide with a
> Collective Bargaining Agreement, then you are
> all set, there's no withdrawal liability.

Cleaves Dep. at 78:8-13.

After this meeting, EUSA, through counsel, contacted the
Administrator of the Pension Fund to discuss specifics related to
the free look provision of the Plan, including reviewing whether
companies under EUSA's control would affect EUSA's treatment as a
new covered employer under the Plan.  Def.'s Statement of
Undisputed Facts ¶¶ 9-10; Cleaves Dep. at 80:19-81:1.  EUSA's
counsel drafted a specific agreement addressing EUSA's treatment
as a new covered employer under the Plan and the application of
the Plan's free look provision to EUSA.  Id. at ¶ 11.  This
Agreement (the "Free Look Agreement") was signed by Russell Lewis
on behalf of EUSA, David Delloso on behalf of Local 312, and
Administrator William Einhorn on behalf of the Pension Fund.
Cleaves Decl. attached to Compl., Ex. C.  The relevant paragraph
of the Free Look Agreement states

> EUSA will assume the Bargaining Agreement and
> commence participation in the Pension Plan as
> a Covered Employer (as defined in the Pension
> Plan) effective the date of purchase of assets
> of Allied.  EUSA shall be treated as a new
> Covered Employer under the Pension Plan for
> all purposes including, without limitation,
> Article IX, Section G of the Pension Plan
> which provides new Covered Employers with an
> opportunity or "free look" under the Pension
> Plan to contribute to the Plan for no more
> than five consecutive plan years with no
> potential for withdrawal liability.

Id. ¶ 2.

EUSA completed the acquisition of Seller's assets and, in early 2006, entered into a two-year collective bargaining agreement with Defendant Local 312, scheduled to expire on December 31, 2007.  Def.'s Statement of Undisputed Facts ¶¶ 13-14.  EUSA and Local 312 then entered into a new three-year collective bargaining agreement, which expired on December 31, 2010.  Id. ¶ 17.  During the negotiation surrounding the new three-year CBA in 2008, the parties did not discuss the Free Look Agreement or the Pension Plan's free look provision.  Id. ¶ 16.

In November of 2010, EUSA sent a letter to the Pension Fund notifying it of EUSA's intention to withdraw from participation in the Pension Plan as of December 31, 2010.  Id. ¶ 18; Cleaves Decl. Ex. D.  The Pension Fund determined that EUSA's withdrawal on that date was subject to withdrawal liability and assessed EUSA's withdrawal liability at $679,325.13.  Def.'s Statement of Undisputed Facts at ¶ 19.  The parties do not dispute that Defendant Local 312 is a separate legal entity from the Pension Fund.  Id. at ¶ 22.

On June 2, 2011, Plaintiff EUSA filed its Verified Complaint in this Action, seeking a declaratory judgment of no liability (Count One), as well as damages and equitable relief stemming from four other Counts: Fraudulent Inducement (Count Two), Breach of Contract (Count Three), Intentional Misrepresentation (Count Four), and Negligent Misrepresentation (Count Five).  [Docket Item 1.]  On that same date, Plaintiff filed a motion for a

temporary restraining order staying the Pension Fund's imposition
of interim withdrawal liability payments.

After a hearing and briefing regarding Plaintiff's motion
for a temporary restraining order, the Court denied Plaintiff's
motion, concluding that Plaintiff had not shown a likelihood of
success on the merits of its fraudulent inducement claim nor that
Plaintiff had demonstrated sufficient immediate irreparable
injury; the Court also held that it had no discretion to stay the
interim withdrawal liability payments as requested by Plaintiff.
EUSA-Allied Acquisition Corp. v. Teamsters Pension Trust Fund of
Philadelphia & Vicinity, Civ. No. 11-3181, 2011 WL 2457695 at *7
(D.N.J. June 16, 2011).

Plaintiff thereafter moved for a preliminary injunction, and
was granted limited discovery into its claims of fraudulent
inducement.  [Docket Item 20.]  After further briefing and
another hearing on the motion, the Court denied Plaintiff's
motion, for similar reasons, concluding that the Plaintiff had
not demonstrated a likelihood of success in prevailing on its
claim that the case should not proceed first to statutory
arbitration pursuant to the MPPAA.  EUSA-Allied Acquisition Corp.
v. Teamsters Pension Trust Fund of Philadelphia & Vicinity, Civ.
No. 11-3181, 2011 WL 3651315 *11 (D.N.J. Aug. 18, 2011).
Defendant Local 312 subsequently moved for summary judgment
seeking to be dismissed from the action.  The Defendant Pension
Fund has not joined this motion.

## III. DISCUSSION

### A.   Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Summary judgment will not be denied based on mere allegations or denials in the pleadings; instead, some evidence must be produced to support a material fact.  Fed. R. Civ. P. 56(c)(1)(A); United States v. Premises Known as 717 S. Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993).  However, the Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party.  Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

Where the nonmoving party bears the burden of persuasion at trial, the moving party may be entitled to summary judgment merely by showing that there is an absence of evidence to support an essential element of the nonmoving party's case.  Fed. R. Civ. P. 56(c)(1)(B); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

### B.   Dispute Resolution Under the MPPAA

The Court's previous Opinions in this action have principally addressed the Court's jurisdiction to adjudicate

disputes of withdrawal liability assessment under the MPPAA as between the employer and the Pension Fund.  In these Opinions, the Court has explained that under the MPPAA, a dispute over the assessment of withdrawal liability is governed by the statute's mandatory arbitration provision.  "Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title [for withdrawal liability] shall be resolved through arbitration."  29 U.S.C. § 1401(a)(1).  The Court held that disputes regarding the imposition of withdrawal liability are normally therefore required to first complete the statutory arbitration before the Court can hear the dispute.  § 1401(b)(2).

An exception to this general rule, however, was recognized in <u>Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters & Employers Pension Fund</u>, 847 F.2d 113, 118-19 (3d Cir. 1988).  There, the Third Circuit held that claims of fraudulent inducement and misrepresentation can be adjudicated by the district court without first requiring statutory arbitration.  In the instant matter, the Court, in its prior Opinions, also recognized that, as between an employer and a pension fund, general contract or statutory disputes are not generally entitled to circumvent the statutory arbitration process.  <u>EUSA-Allied Acquisition Corp.</u>, 2011 WL 3651315 *6 (D.N.J. Aug. 18, 2011).

As a result, when resolving the instant motion, the Court cannot, consistent with its prior Opinions, resolve disputes

regarding whether withdrawal liability was properly assessed in this case prior to the completion by EUSA and the Pension Fund of the mandatory arbitration.  Accordingly, the Court cannot interpret the Free Look Agreement as it relates to the assessment of withdrawal liability in this case.  Indeed, the Court has previously held that, at least as between EUSA and the Pension Fund, "[a]ny interpretation of the Free Look Agreement necessarily involves an interpretation of the referenced portions of the Plan and Statute" and therefore the Court has determined that it cannot resolve the dispute of contract liability under the Free Look Agreement prior to the completion of the statutory arbitration.  Id. at *10.

C.   **Breach of Contract Claim**

Defendant Local 312 moves for summary judgment against Plaintiff's breach of contract claim, arguing that no dispute of fact exists as to whether Local 312 breached any term of the Free Look Agreement.  Plaintiff opposes on the ground that the contract is ambiguous as to whether Defendant Local 312 intended to indemnify Plaintiff from any withdrawal liability that might be assessed within five years of the agreement.

At this point, before EUSA and the Pension Fund have completed the mandatory arbitration required under the MPPAA, the Court declines to resolve the dispute.  The contract claim at issue necessarily involves interpretation of the Free Look Agreement, which the Court has previously held is intertwined

with an evaluation of whether Defendant Pension Fund properly assessed withdrawal liability in this case.  Even if the Court could resolve the contract dispute between Defendant Local 312 and Plaintiff EUSA on summary judgment at this time without violating the mandatory arbitration provision of § 1401(a)(1) or contradicting its prior Opinions in this action, doing so at this stage would potentially be premature, as resolution of Plaintiff EUSA's withdrawal liability claim through arbitration with the Pension Fund may moot its contract claim with Defendant Local 312 if Plaintiff eventually prevails in its interpretation of the Plan, the statute and the Free Look Agreement.  Accordingly, the Court will stay determination of Defendant Local 312's motion for summary judgment against the contract claim pending arbitration of the withdrawal liability between EUSA and the Pension Fund.

### D.   Fraudulent Inducement Claim

By contrast, the Third Circuit has held that a claim of fraudulent inducement can be adjudicated by the district court prior to the completion of the statutory arbitration.  The Third Circuit in Carl Colteryahn held that § 1401 of the statute does not bar the district court's adjudication of such claims because it "provide[s] no basis for either adjusting or eliminating an assessment based on fraud or misrepresentation."  Carl Colteryahn, 847 F.2d at 119.  Consequently, the Court will consider and, for the following reasons, grant the motion for summary judgment as to Defendant Local 312 against Count Two.

The Court has previously held that, to prevail on a claim of fraudulent inducement in this action, Plaintiff must prove

>    (1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as the proximate result.

EUSA-Allied at *6 (quoting Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters & Employers Pension Fund, 1993 WL 120457 at *2 (W.D. Pa. Feb. 9, 1993).

Defendant argues that no dispute of fact exists in the record establishing that any representative of Defendant Local 312 expressed a fraudulent misrepresentation, or that Plaintiff EUSA justifiably relied on any such expression by any representative of Local 312.  The Court agrees in part.

As to Defendant's argument that no dispute of fact exists as to Plaintiff's justifiable reliance on Defendant's representatives' statements, the Court finds that this element of the claim is not properly decided on a motion for summary judgment because whether a plaintiff's reliance was "reasonable" is a question of fact for the jury.  Angrisani v. Capital Access Network, Inc., 175 F. App'x 554, 557 (3d Cir. 2006) (holding that question of whether reliance was reasonable or justifiable "presents a factual issue that is more properly left to the judgment of the jury.") (citing Jewish Ctr. of Sussex County v. Whale, 86 N.J. 619, 626 (1981)).

12

However, the Court agrees with Defendant that no dispute of fact exists as to whether Defendant's representatives knew of any alleged falsity of their statements in the December 2005 meeting. The Court has already held, in fact, that the statements of Local 312's representatives in December 2005, which are the only statements by Local 312 in the record other than the Free Look Agreement itself (which was drafted by EUSA's counsel and only signed by Defendants), are not fraudulent misrepresentations. "[T]hey cannot be fraudulent inducement by Defendant Local Union 312 because there is no evidence of intent to mislead. . . ." Id. at *7.  Indeed, Mr. Uniatowski stated in his deposition for this action that he understood the free look provision of the plan to extend for a full five years, consistent with what he or his Local 312 colleague represented to Plaintiff in December of 2005.  Uniatowski Dep. at 16:5-12.  Therefore the Court will grant Defendant's motion for summary judgment as to Count Two.

### E.   Misrepresentation Claims

Finally, Defendant moves for summary judgment as to Plaintiff's Counts Four and Five: intentional misrepresentation and negligent misrepresentation.  The Court concludes, based on the reasoning of Carl Colteryahn, that these claims of misrepresentation are sufficiently removed from the arbitrable issues of assessing withdrawal liability that the Court is able to address the claims prior to arbitration.  See Carl Colteryahn, 847 F.2d at 119.

Plaintiff's claim for intentional misrepresentation, construed by the Court as common law fraud,[1] requires that Plaintiff prove

> (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.

Banco Popular N. Am. v. Gandi, 184 N.J. 161, 173 (2005) (quoting Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997)).  The Court finds that, as with the fraudulent inducement claim, no dispute of fact exists that the Union representatives' statements were intentionally false.  Thus, the Court will grant Defendant's motion for summary judgment as to Count Four of the Complaint.

The Court must deny, however, Defendant's motion for summary judgment as to Count Five, the negligent misrepresentation claim. Defendant argues, interchangeably with the intentional misrepresentation claim, that no dispute of fact exists as to whether Defendant's representatives knew of any falsehood they allegedly expressed, or as to whether any reliance by Plaintiff on such statements was justifiable.  The Court concludes that it cannot grant summary judgment on this claim based on these two arguments.

---

[1] "The Court construes a claim of 'intentional misrepresentation' as one for fraud."  Boyko v. Am. Int'l Group, Inc., Civ. No. 08-2214, 2009 WL 5194425, at *3 (D.N.J. Dec. 23, 2009) (citing Jewish Ctr. of Sussex County v. Whale, 86 N.J. 619 (1981)).

First, the Court reiterates that the reasonableness or justifiability of a plaintiff's reliance is not a question properly decided on summary judgment.  Second, the Court notes that Plaintiff need not prove the intent to mislead in a negligent misrepresentation claim.  To prove a claim of negligent misrepresentation under New Jersey law, Plaintiff must demonstrate that

> 1) the defendant negligently provided false information; 2) the plaintiff was a reasonably foreseeable recipient of that information; 3) the plaintiff justifiably relied on the information; and 4) the false statements were a proximate cause of the plaintiff's damages.

McCall v. Metropolitan Life Ins. Co., 956 F. Supp. 1172, 1186 (D.N.J. 1996) (citing Karu v. Feldman, 119 N.J. 135, 146-47 (1990)).  Thus, the Court finds that whether or not Defendant's representatives' statements were knowingly false is not material to Plaintiff's claim.  On a motion for summary judgment, it is the moving party's initial burden to "show[] that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  The Court concludes that Defendant has not met this burden in the instant motion, and will therefore deny Defendant's motion as to Count Five.

## IV.  CONCLUSION

The Court concludes that it will prudentially stay determination of the contract claim until the dispute over withdrawal liability has first been resolved through the

15

statutory arbitration mandated in § 1401 of the MPPAA.  However, as explained above, the Court will grant Defendant's motion as to Counts Two and Four, the claims of fraudulent inducement and intentional misrepresentation.  Finally, the Court concludes that Defendant Local 312 has not met its burden of showing that no dispute of fact exists as to any element of Plaintiff's negligent misrepresentation claim in Count Five.  The Court will, therefore, deny the motion as to this Count.

Finally, the Court requests the Parties' views on the proper route for resolving those remaining issues in this action that need not be arbitrated, and whether entry of an Order staying the remaining arbitrable issues pending arbitration is warranted. Consequently, the Court requests that the parties confer through counsel and submit by letter their recommendations for how this case should next proceed no more than fourteen (14) days after the entry of the accompanying Order.  These letters should merely outline in brief whether further dispositive motions are necessary, whether entry of a stay is appropriate, and a suggested briefing schedule.  The Court will hold a teleconference shortly after the receipt of these letters to set a scheduling order.

The accompanying Order will be entered.


**March 26, 2012**                          **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            Chief U.S. District Judge