```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| EUSA-ALLIED AQUISITION CORP., | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 11-3181 (JBS/AMD) |
| v. | |
| TEAMSTERS PENSION TRUST FUND OF PHILADELPHIA & VICINITY, et al., | **MEMORANDUM OPINION** |
| Defendants. | |

**SIMANDLE,** Chief Judge:

Before the Court is a motion to vacate an arbitration award brought by Defendant Teamsters Pension Trust Fund of Philadelphia & Vicinity ("the Fund" or "Defendant"). [Docket Item 65.] The dispute concerns the meaning of the phrase "the number of years required for vesting under the plan" in the Multiemployer Pension Plan Amendment Act ("MPPAA"), 29 U.S.C. §§ 1390(a)(2). In this case, an arbitrator ruled that the Fund, a jointly administered multiemployer defined benefit pension plan, could not demand a withdrawal penalty from Plaintiff EUSA-Allied Acquisition Corp. ("EUSA") under the MPPAA when EUSA withdrew from the Fund after four years and 11 months of making contributions. The "free-look" provision of the MPPAA permits employers to withdraw from a pension plan without liability if withdrawal is made before "the number of years required for vesting under the plan," or six

consecutive plan years, whichever comes first.[1] In this case, the arbitrator found that "the number of years required for vesting" meant "a specific number of consecutive 12 month periods," and because the Teamsters Pension Plan of Philadelphia & Vicinity ("the Plan") requires five years of vesting service, EUSA was protected by the "free-look" provision of the MPPAA, as it only had contributed to the Plan for four years and 11 months -- less than the five years of service required for vesting. (Award & Opinion [Docket Item 65-2] at 9-10.)

Defendant argues that the arbitrator erred as a matter of law, and moves for the Court to "rescind the assessment, and grant the Fund the appropriate remedies under MPPAA." (Def. Mot. Br. at 2.) For the reasons explained below, the Court agrees with the reasoning set forth in the arbitrator's award and will deny Defendant's motion to vacate the arbitrator's award.

1. The Court has recited the facts of the underlying dispute in three previous opinions, which are incorporated here by

---

[1] 29 U.S.C. § 1390(a)(2). The MPPAA, which amended the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq., provides:

> An employer who withdraws from a plan in complete or partial withdrawal is not liable to the plan if the employer . . . had an obligation to contribute to the plan for no more than the lesser of -- (A) 6 consecutive plan years preceding the date on which the employer withdraws, or (B) the number of years required for vesting under the plan[.]

29 U.S.C. § 1390(a)(2).

reference. See EUSA-Allied Acquisition Corp. v. Teamsters Pension Trust Fund of Philadelphia & Vicinity, No. 11-3181, 2011 WL 2457695, at *1-*2 (D.N.J. June 16, 2011); EUSA-Allied Acquisition Corp. v. Teamsters Pension Trust Fund of Philadelphia & Vicinity, 2011 WL 3651315, at *1-*2 (D.N.J. Aug. 18, 2011); EUSA-Allied Acquisition Corp. v. Teamsters Pension Trust Fund of Philadelphia & Vicinity, 2012 WL 1033012, at *1-*3 (D.N.J. Mar. 26, 2012).[2]

2. The facts relevant to this motion are not in dispute. Pursuant to a collective bargaining agreement, EUSA had an obligation to contribute to the Fund from February 8, 2006, to December 31, 2010, a period of approximately four years and 11 months. (Def. Mot. Br. at 3.) According to the Plan, to be eligible for a pension benefit, the employee "must be 'vested' -- that is, you must either retire from Covered Employment after attaining Normal Retirement Age or satisfy the Plan's minimum service requirement of five (5) years of Vesting Service . . . ." (Summary Plan Description ("SPD") [Docket Item 65-3] at 10 § III.) A participant employee earns "a year of Vesting Service" if he or she is "credited with at least 750 Hours of Service" during "a calendar year." (Id. at 14 § IV(A)(2).) On August 7, 2006, several months after EUSA began contributing to the Fund, EUSA hired Karl Williams, who earned enough hours of credited service to become fully vested in Fund benefits by June 1, 2010, after

---

[2] These opinions appear as Docket Items 22, 51 & 60.

just three years and 10 months of employment and before EUSA withdrew from the Plan.[3] (Def. Mot. Br. at 3-5.)

3. The Fund assessed EUSA a withdrawal penalty of $679,325.13, after EUSA stopped contributing to the Fund in 2010. EUSA brought this action to prevent the Fund from collecting the penalty. The case was referred to arbitration. The arbitrator Norman Brand, in San Francisco, Calif., defined the issue before him as follows:

> Does the [phrase] 'the number of years required for vesting under the plan' mean the number of years of Vesting Service required for an employee to be entitled to a non-forfeitable benefit, or the actual period of time in which any employee of the employer accrues sufficient credited hours to become entitled to a non-forfeitable benefit?

(Award & Opinion at 2.)

4. The arbitrator ruled that "[t]he plain language of the statute" supports a reading that "the number of years required for vesting" means "a specific number of consecutive 12 month periods" -- in this case, the number of years of required vesting service or five years. (Id. at 4-6, 9.) He advanced four rationales. First, citing Black's Law Dictionary, he stated that "the ordinary unmodified meaning of 'year' is a 12 consecutive month period." (Id.) Noting the language variations in § 1390(a)(2)(A) ("6 consecutive plan years") and subsection

---

[3] Williams earned 836.88 hours of credited service in 2006, 1,216 hours in 2007, 1,607.04 hours in 2008, 2,034.96 hours in 2009, and 1,929.84 hours in 2010. (Def. Mot. Br. at 5.)

(a)(2)(B) ("the number of <u>years</u> required for vesting") (emphasis added), the arbitrator found that although the two phrases have distinct meanings -- a "plan year" means either a "calendar, policy, or fiscal year," under 29 C.F.R. § 4001.2 -- "those meanings share a common element: the 12 consecutive month period." (<u>Id.</u> at 7.) Second, the arbitrator cited Department of Labor regulations, which permit a plan to "designate any 12-consecutive-month period as the vesting computation period." (<u>Id.</u> at 7-8) (citing 29 C.F.R. § 2530.203-2(a)). Because the Plan requires five years of vesting service and uses calendar years as its vesting period, the "'number of years required for vesting' refers to the number of 12 month periods the Fund uses to determine when benefits are nonforfeitable." (<u>Id.</u> at 8.) Third, the arbitrator reasoned that the Fund's position "implicitly relies on substituting new language -- the *period of time* required for vesting under the plan -- for the statutory language 'the *number of years* required for vesting under the plan.'" (<u>Id.</u>) (emphasis in original). The Fund's interpretation "would create a Free Look period that is unknowable at the time an employer becomes obligated to contribute" because it would be

> determined by future needs of workers, individual hire dates, and individual availability to work. If Congress had wanted to make the exception contingent on the date any employee earned enough credited hours to qualify for non-forfeitable benefits it could have done so. But it did not. Instead, it chose to measure the length of the Free Look exception by 'the number of years required for vesting.'

(Id.) Finally, the arbitrator rejected the Fund's argument that "number of years" was ambiguous. "Giving the phrase its ordinary meaning leaves no ambiguity to be resolved so as to protect the participants and beneficiaries." (Id. at 9) The arbitrator added that if there were ambiguity, "it is not clear that protecting participants is the same as simply deciding for the Fund whenever it argues it is entitled to withdrawal liability." (Id. at 9 n.8.) The arbitrator's reading of the statute "construes the exception" to withdrawal liability "narrowly," limiting "the meaning of 'the number of years required for vesting' to the number of years specified in the Plan." (Id.) The arbitrator ruled that the Fund is "not entitled to demand withdrawal liability form [sic] EUSA. It is required to return the withdrawal liability payments EUSA had made, together with statutory interest." (Id. at 10.)

    5. A district court reviews an arbitrator's legal conclusions de novo. See SUPERVALU, Inc. v. Bd. of Trustees of Sw. Pa. & W. Md. Area Teamsters & Employers Pension Fund, 500 F.3d 334, 340 (3d Cir. 2007) ("An arbitrator's findings of fact are subject to clear error review, but his or her legal conclusions are subject to de novo review."). The Court of Appeals thus recognized that an arbitrator's conclusion as to withdrawal liability is a legal conclusion subject to de novo review. Id. For the reasons set forth in the arbitrator's award

and opinion, and those set forth below, the Court will deny Defendant's motion to vacate.

6. Defendant argues that the text of statute favors its interpretation. According to Defendant, because Mr. Williams actually vested in three years and 10 months of employment, "the number of years required for vesting" can be no greater than the amount of time that was required for Mr. Williams to vest, and EUSA is therefore liable because its obligation to contribute to the Fund exceeded that period of time by a year and a month. (Def. Mot. Br. at 8-9.) Defendant further argues that the different formulations in the statute -- "6 consecutive plan years" versus "number of years required for vesting" -- evince a distinction drawn by Congress. (Id. at 9-10.) Defendant concludes that "while 'plan years' in Subsection (a)(2)(A) means 12-month periods, 'years' in Subsection (a)(2)(B) must include fractions of years." (Id. at 10.) Plaintiff responds that the plain meaning, as determined by the arbitrator, of a "twelve-month consecutive period," is the ordinary meaning of the word "year." (Pl. Opp'n at 11.)[4]

7. The plain meaning of the word "year" in Subsection

---

[4] In a letter to the Court in further support of its motion, the Fund suggests that if Congress had meant the "number" of years to mean whole numbers, it would have stated so, or used the word "integer." (Def. Letter [Docket Item 71] at 2-3.] The Court considers the additional arguments made in Defendant's letter about statutory construction, but they do not alter the conclusions reached herein.

(a)(2)(B) is a 12-month period. Likewise, the plain meaning of "number of years" is the number of 12-month periods. If Congress had meant something else, Congress could have drafted the subsection to read "the amount of time sufficient to enable an employee to vest," or Congress could have prohibited employers from withdrawing without liability after an employee, whose service commenced after the employer began contributing to the fund, actually vested under the Plan. As the arbitrator noted, Congress did not draft the statute this way. The number of years required "for vesting under the Plan" is and has always been five, even for Mr. Williams, whose service spanned five calendar years. The fact that the Plan here permits employees to earn a year's worth of vesting service in less than a year should not affect the statute or its interpretation, nor does it change the requirements of the Plan.

    8. Section 1390(a)(2)(A) expressly refers to the Plan itself ("years <u>required</u> for vesting <u>under</u> <u>the</u> <u>plan</u>") (emphasis added). The Plan requires employees to accrue sufficient hours of vesting service within five calendar years. The plan does not "require" employees to achieve vesting service in less time, although it so permits. The Plan makes no references to fractions of years, no references to three years and 10 months; it only references the number five when discussing the number of years required for vesting.

9. Defendant would prefer that Congress had written: "the number of <u>plan</u> years required for vesting <u>under</u> <u>the</u> <u>plan</u>" or "the <u>whole</u> number of <u>calendar</u> years," or "the number of years <u>expressed</u> <u>as</u> <u>an</u> <u>integer</u>," or "the minimum window of time, expressed as a fraction of calendar years, within which an employee may accrue a sufficient number of hours of vesting service to fully vest under the plan." These formulations might be more precise, but the excess verbiage is hardly necessary to convey the meaning already expressed when according the words their ordinary meaning. The Court agrees with the arbitrator's sensible explanation to distinguish the language of the two subsections of the provision as having two meanings, even if they both require the word "year" to carry its ordinary meaning of 12 months.

10. Defendant argues that the arbitrator misreads the Department of Labor regulations and conflates the concepts of a "computation period," which the Plan defines as the calendar year during which an employee can earn a year of vesting service, and a "year of vesting service" itself. (Def. Mot. Br. at 11-13.) Defendant suggests that the regulations draw a "sharp distinction" between a computation period and a year of vesting service, and that "[n]othing in these regulations supports the Arbitrator's finding that 'the number of years required for vesting under the plan' amounts to 5 periods of 12 months each."

9

(Id. at 13.) Plaintiff responds that the arbitrator was correct to harmonize the definitions of vesting compensation periods, "years of service," and "years required for vesting." (Pl. Opp'n at 12).

11. These regulations do not help Defendant. The regulations do distinguish between a computation period and a year of vesting service, which can be achieved in less than a calendar year. But the regulations do not change the fact that number of years of service required for vesting is five. If the computation period for vesting service is a 12-month period, and employees are required to achieve the requisite hours of service in five computation periods, the most logical reading of the "number of years required for vesting under the plan" is five years, which, given the computation period of 12 months, is a total of 60 months.

12. Defendant further argues that its interpretation of the statute would not lead to an "unknowable" free-look period, as the arbitrator stated, because "the employer could readily determine the timeframe for the free look by simply reading the Pension and the applicable collective bargaining agreement." (Def. Mot. Br. at 13-14.) This argument is not responsive to the arbitrator's point, which aptly observes that Defendant's interpretation of the statutory language renders unpredictable exactly when the employer could withdraw without incurring

liability. To argue, as Defendant does, that the employer could simply identify the number of hours sufficient to be credited with a year of service is to ignore the fact that the employer has no way to predict when such vesting service could, or would, be achieved.

13. It is telling that Defendant cannot say with certainty what the "number of years required for vesting" is under its interpretation of the statute. Although Mr. Williams fully vested within a span of three years and 10 months, he worked 836.88 hours in 2006 and 1,929.84 hours in 2010. To earn a year of vesting service he need only have worked 750 hours in each of those years. Therefore, Mr. Williams likely achieved the 750 hour threshold in less than three years and 10 months. But even now, Defendant cannot say how long it took for Mr. Williams to vest, and other workers could have vested in even less time. It is unlikely Congress intended to create this confusion and uncertainty by using the language it did.

14. Defendant next argues that the arbitrator improperly conducted this analysis in the first place. Defendant contends that "the plain language of the statute trumps the Arbitrator's views about the possible consequences of complying with that statute." (Def. Mot. Br. at 15.) Having concluded that Defendant's interpretation conflicts with the plain language of the statute, Defendant's argument loses its force. But even if

the language were ambiguous, Courts frequently look at the purpose or legislative history of a statute to confirm or rule out an interpretation of the text. See, e.g., Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2532 (2013) ("That result would be inconsistent with both the text and purpose of Title VII."); Muscarello v. United States, 524 U.S. 125, 132 (1998) ("We conclude that neither the statute's basic purpose nor its legislative history support" the position advocated by the appellant). Here, the purpose of the MPPAA was "to encourage new employers to join" multiemployer funds "by providing various incentives, including the 'free look' provision and the rule limiting any new employer's liability for unfunded vested benefits to those obligations created after the enactment of the MPPAA." Textile Workers Pension Fund v. Standard Dye & Finishing Co., Inc., 725 F.2d 843, 856-57 (2d Cir. 1984). The legislative history of the MPPAA shows that the act "was designed to foster plan continuation and growth because [such] provide participants and beneficiaries [with the] greatest security against benefit loss." Id. at 856 (citing H.R. Rep. No. 869, 96th Cong., 2d Sess. 51, reprinted in 1980 U.S. Code Cong. & Ad. News at 2919). Defining with predictability conduct that would incur liability is consistent with the purpose of encouraging employers to participate in funds. At the same time, forcing employers to pay penalties to help ensure funding of vested employees is

consistent with the scheme of the MPPAA and ERISA as a whole, as well. The Court's reading of the text certainly can be said to be consistent with the purposes of the Act, and it is not improper to consider whether a strained reading of the text would yield an absurd or impractical result. See Molzof v. United States, 502 U.S. 301, 309 (1992) ("The Government's interpretation of 'punitive damages' would be difficult and impractical to apply.").

15. Defendant invokes two canons of statutory construction which it says must be applied here. First, Defendant argues the Court must construe the MPPAA liberally in order to protect plan participants and beneficiaries. (Def. Mot. Br. at 17.) Second, Defendant argues that the Court should construe the free-look defense narrowly as an exception to the general statutory scheme established by the MPPAA. (Id. at 20.) Canons of construction are of limited use in a case such as this, where the language of the statute is clear, where giving the words their ordinary meaning aligns with the purpose of the statutory scheme, and where the proffered alternative interpretation relies on a strained reading of the text and would lead to impractical results. See J.E. Faltin Motor Transp., Inc. v. Eazor Exp., Inc., 273 F.2d 444, 445 n.6 (3d Cir. 1959) (citing Karl N. Llewellyn, Remarks On the Theory of Appellate Decision & The Rules or Canons About How Statutes Are to Be Construed, 3 VAND. L. REV. 395, 401-404 (1950),

which highlights the "thrust" and "parry" of contradictory canons of construction).

16. Finally, the arbitrator's award is consistent with the Fund's own interpretation of the period for an employer's "free look" and withdrawal. According to Article IX, Section G, of the Plan, as amended and restated as of January 1, 2005, "an employer who withdraws from the Plan in a complete or partial withdrawal is not liable to the Plan if the employer . . . (b) had an obligation to contribute to the Plan for no more than <u>five consecutive plan years</u> preceding the date on which the employer withdraws . . . ." (Certification of James P. Anelli, Esq., Ex. A. [Docket Item 69-1] at 47) (emphasis added). This reading was confirmed in a "Free Look Agreement" between EUSA and the Fund in February 2006:

> EUSA shall be treated as a new Covered Employer under the Pension Plan for all purposes including, without limitation, Article IX, Section G of the Pension Plan, which provides new Covered Employers with an opportunity or 'free look' under the Pension Plan to contribute to the Plan for no more than <u>five consecutive plan years</u> with no potential for withdrawal liability.

(<u>Id.</u> Ex G ¶ 2) (emphasis added). The governing free-look provision was adopted by the board of trustees for the Fund in 1999, at which time William Einhorn, the Fund's current administrator, explained that a five-year free look provision was necessary in light of the Congressionally mandated five-year vesting schedule, which became effective on January 1, 1999. (<u>Id.</u>

14

Ex. E. ¶ 12; see also Einhorn Decl. 31:19-32:20 (recounting the amendments of the free-look and vesting periods to five years).) These references to five years -- not fractions of years, not the amount of time required to accumulate sufficient vesting service -- confirm the Court's textual analysis of the statute and the conclusion that the language refer to five 12-month periods.

17. Plaintiff seeks an award of attorneys' fees under 29 U.S.C. § 1132(g)(1), as did Defendant in filing this motion to vacate the arbitration award. The Court does not decide whether Defendant is entitled to recover attorneys' fees, but the Court sets a briefing schedule for Plaintiff to file its motion within fourteen (14) days of the entry of the accompanying Order.

18. Defendant's motion to vacate is denied. An accompanying Order will be entered.

**July 29, 2013**                   **s/ Jerome B. Simandle**
Date                                          JEROME B. SIMANDLE
                                                   Chief U.S. District Judge